[Cite as *State v. Burns*, 2017-Ohio-7138.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

JOANNE BURNS

     Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Earle E. Wise, Jr., J.

Case No. 15CA85

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Case No. 2014 CR 0555 R |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 7, 2017 |
| APPEARANCES: | |

For Plaintiff-Appellee

GARY BISHOP
Prosecuting Attorney
Richland County, Ohio

By: JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

KATHERINE R. ROSS-KINZIE
Assistant State Public Defender
250 East Broad St., Suite 1400
Columbus, Ohio 43215

*Hoffman, P.J.*

**{¶1}** Defendant-appellant Joanne Burns reopens her appeal of her conviction and sentence entered by the Richland County Court of Common Pleas on one count of illegal manufacture of methamphetamines, in the vicinity of a school zone and/or juvenile; one count of illegal assembly or possession of chemicals for the manufacture of methamphetamines, in the vicinity of a school zone and/or a juvenile. Plaintiff-appellee is the state of Ohio.[1]

STATEMENT OF THE FACTS AND CASE

**{¶2}** On August 12, 2014, Officer Mandy Lynn Rodriquez of the Mansfield Metrich Drug Task Force received a call from a pharmacist at the Walgreens in Mansfield, Ohio. The pharmacist reported suspicious conduct on the part of two women attempting to purchase a quantity of pseudoephedrine while visiting the Walgreens pharmacy. The women had trouble producing identification, and one of the women left leaving her purported identification behind. Each of the women had prior significant history of purchasing pseudoephedrine.

**{¶3}** Officer Rodriquez and Officer Steven Schivinski of the Mansfield Metrich Drug Task Force drove to the Walgreens and spoke with the pharmacist, retrieving the left-behind identification. The officers learned the identification belonged to Appellant, who had a suspended driver's license but had been issued a state identification card.

---

[1] This matter comes before the Court following our granting of an application for reopening filed by Appellant following this Court's Opinion and Judgment Entry entered in *State v. Burns*, Richland App. No. 15 CA 85, 2016-Ohio-7375.

{¶4} The officers then drove to the address indicated on the identification card left at the pharmacy, that being 751 Armstrong in Mansfield, Ohio. The premises at the address appeared to be abandoned. A subsequent inquiry revealed Appellant was presently living at 739 Bowman Street in Mansfield, Ohio. The officers proceeded to that address.

{¶5} Upon arrival there, a boy about twelve years of age answered the door, stating no adults were present at the home. The officers returned to the residence an hour later, noticing a vehicle in the driveway. Upon knocking, two adults answered the door, who were identified as Appellant and her husband, Lyle Burns. The officers obtained verbal consent to search the residence from the Burns.

{¶6} Present in the home were: Appellant, Lyle Burns, co-defendant Tracy Isaac, and two minor children. The female child approximately five or six years of age belonged to Appellant and her husband, and a male child, approximately twelve years of age, who had previously answered the door and belonged to Tracy Isaac, the co-defendant herein.

{¶7} Tracy Isaac indicated to the officers she had been staying at the residence for about two weeks due to marital problems with her husband. At the time the officers entered the home, Isaac was in an upstairs bedroom.

{¶8} Officers conducted a search of the home, including the upstairs area where the Appellant and her co-defendant had bedrooms, and the basement. In the basement of the residence, officers found: two bottles of liquid, rubber tubing, coffee filters, Coleman fuel, ammonia nitrate, peeled lithium batteries, and cold packs. The officers also conducted a test which indicated the presence of ammonia, necessary in the manufacture of methamphetamine. The items were submitted to the Mansfield Police Crime Lab. The

liquid found in the one-pot cooking vessel was tested for the presence of methamphetamine.

{¶9} The Richland County Grand Jury indicted Appellant as follows: Count One, manufacturing or engaging in the production of methamphetamine, in the vicinity of a school zone and/or juvenile, in violation of R.C. 2925.04(A) and (C)(3)(b), a felony of the first degree; Count Two: assembling or possessing one or more chemicals used to manufacture methamphetamine, in the vicinity of a school and/or juvenile, in violation of R.C. 2925.041(A) and (C)(2), a felony of the second degree; and Counts Three and Four, endangering children, in violation of R.C. 2919.22(B)(6), both felonies of the third degree.

{¶10} On August 4, 2015, the State filed a motion for joinder of defendants. On August 25, 2015, Appellant filed a memorandum in opposition. The trial court granted the motion for joinder.

{¶11} The matter proceeded to jury trial. The jury found Appellant guilty of the charges as stated in the indictment. On September 14, 2015, the trial court sentenced Appellant to a mandatory ten years imprisonment on Count One; the trial court merged Appellant's conviction on Count Two with the conviction on Count One. The trial court sentenced Appellant to two years mandatory time on Counts Three and Four, ordering the terms to run concurrently, for a total term of ten years. Appellant was also sentenced to a five year term of mandatory post-release control, and a sixty month driver's license suspension.

{¶12} Via Order of September 17, 2015, the trial court imposed costs of the jury in the amount of $1,400 jointly and severally between Appellant and her codefendant Tracy Isaac.

**{¶13}** Appellant filed a direct appeal of her conviction and sentence in *State v. Burns*, Richland App. No. 15CA85, 2016-Ohio-7375. Via Opinion and Judgment Entry of October 14, 2016, this Court affirmed the trial court's denial of Appellant's Criminal Rule 29(A) motion for acquittal as to Count One of illegal manufacture of methamphetamine, in violation of R.C. 2925.04(A) and (C)(3)(b), within the vicinity of a school zone and/or a juvenile; and Count Two of illegal possession of chemicals for the manufacture of methamphetamine, in violation of R.C. 2925.041(A) and (C)(2), in the vicinity of a school zone and/or a juvenile.[2] This Court reversed the trial court's denial of Appellant motion for acquittal as to Counts Three and Four, Endangering Children, in violation of R.C. 2919.22(B)(6).

**{¶14}** Via Entry of March 29, 2017, this Court granted Appellant's Rule 26(B) application to reopen appeal. Appellant assigns as error on reopening,

I. THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE JUVENILE SPECIFICATIONS FOR COUNT ONE, ILLEGAL MANUFACTURE OF METHAMPHETAMINE, AND COUNT TWO, ILLEGAL POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF METHAMPHETAMINE. FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

---

[2] This Court also affirmed the trial court's joinder of offenses, denial of Appellant's motion in limine to exclude the testimony of an expert witness, and the trial court's allowing evidence of Appellant's past purchases of pseudoephedrine.

II. JOANNE BURNS WAS DEPRIVED OF HER RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN TRIAL COUNSEL FAILED TO ARGUE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JUVENILE SPECIFICATIONS FOR COUNT ONE, ILLEGAL MANUFACTURE OF METHAMPHETAMINE, AND COUNT TWO, ILLEGAL POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF METHAMPHETAMINE IN HER RULE 29 MOTION FOR ACQUITTAL. SIXTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; SECTION 10, ARTICLE I, OHIO CONSTITUTION.

III. BY FAILING TO ARGUE THAT THE STATE DID NOT PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE JUVENILE SPECIFICATIONS AND FAILING TO ARGUE THAT TRIAL COUNSEL WAS INEFFECTIVE, ORIGINAL APPELLATE COUNSEL PROVIDED MS. BURNS WITH INEFFECTIVE ASSISTANCE, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION. APP. R.26(B)(7).

I.

**{¶15}** In the first assigned error, Appellant maintains her convictions on the two attendant specifications to Counts One and Two, "within the vicinity of a juvenile", were not supported by the sufficiency of the evidence.

{¶16} The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶17} Appellant was convicted on Count One, manufacturing or engaging in the production of methamphetamine, in the vicinity of a school zone and/or juvenile, in violation of R.C. 2925.04(A) and (C)(3)(b), a felony of the first degree; and on Count Two, assembling or possessing one or more chemicals used to manufacture methamphetamine, in the vicinity of a school and/or juvenile, in violation of R.C. 2925.041(A) and (C)(2), a felony of the second degree.

{¶18} R.C. 2925.01(BB) defines "in the vicinity of a juvenile" as,

(BB) An offense is "committed in the vicinity of a juvenile" if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.

{¶19} Significantly, on direct appeal, this Court reversed Appellant's convictions for endangering children in Counts Three and Four, finding,

> In this case, the statute specifically requires the State to prove the children were allowed on the parcel of property and *within one hundred feet* of the methamphetamine lab. No one testified the children were ever in the basement or the specific distance between where the children had access to in the house and the meth lab in the basement. Therefore, the State has not met the burden of proof.

*Burns,* supra, at ¶37.

{¶20} It is undisputed the children resided in the home herein. The children were present at the time the officers arrived at the residence, and told police adults were not present. The children were present during the time the officers searched the residence.

{¶21} Contrary to R.C. 2919.22(B)(6) defining the offense of endangering children analyzed on direct appeal, the juvenile enhancement specifications do not necessarily require proof the offense was committed within 100 feet of the juvenile.

{¶22} The Supreme Court in *State v. Lozier,* 101 Ohio St.3d 161, 803 N.E.2d 770, 2004-Ohio-732, held,

R.C. 2925.01(BB) makes it abundantly clear that the offender's mental state is irrelevant in determining whether the offender has committed an offense "in the vicinity of a juvenile." An offender is liable whether or not he knows the age of the juvenile, or whether he realizes that a juvenile is in the vicinity.

\*\*\*

The General Assembly, in imposing the strict liability requirement for drug sales "in the vicinity of a juvenile," perfectly illustrates what R.C. 2901.21(B) calls a "purpose to impose strict liability." Additionally, the stark contrast between the definition of "committed in the vicinity of a school" and the definition of "committed within the vicinity of a juvenile" indicates that the General Assembly did not intend to impose strict liability for selling LSD in the "vicinity of a school" section.

\*\*\*

The distance requirement for an act to be committed within "the vicinity of a juvenile" is only 100 feet or "within view of the juvenile." Drug trafficking is a dangerous activity. Beyond the psychic danger of seeing drugs being sold, there is a very real physical danger surrounding a drug transaction, even for nonparticipants. Thus, a child, whether in view or not, could become a part of the collateral damage of a failed transaction. The threat to a child is real and imminent.

On the other hand, to be "in the vicinity of a school," an offender could, by definition, be 1,000 feet away from a school. A child may not

necessarily be nearby, or even in the school. The transaction could occur in the late evening hours, or in summer, or during any other period of the year that the school is closed.

The difference between the potential peril of a transaction that occurs "in the vicinity of a school" and "in the vicinity of a juvenile" is significant. "In the vicinity of a school" addresses danger that can be theoretical; "in the vicinity of a juvenile" addresses a real, present danger. Because the "vicinity of a juvenile" offense is so much more dangerous, the General Assembly has determined that the offender's knowledge that a juvenile is nearby is irrelevant. Also, *since "in the vicinity of a juvenile" includes being in view of a juvenile, its parameters can expand well beyond 100 feet*. Thus, if an offense occurs within 1,000 feet of a school, the offender still can be subject to strict criminal liability if there is a juvenile within view. As the danger to children becomes more real, the culpable mental state gets stricter. (Emphasis added).

{¶23} In *State v. Riel*, 4th Dist. No. 08CA3, 2008-Ohio-5354, Riel was convicted of trafficking in marijuana in the vicinity of a juvenile. The Fourth District held the presence of at least two children in a church parking lot, across the street, sufficient evidence the offense was committed "within the view" of a juvenile. The Court held,

Moreover, assuming arguendo that we have misunderstood Officer Tilton's testimony, we nevertheless find sufficient evidence that the offense

was committed "within the view" of a juvenile. The statute does not require that juveniles need to have actually observed the transaction. *Id.* Rather, the transaction need only have occurred "within" their view. Although nothing in the statute or case law explicitly sets out what the Ohio General Assembly meant by the phrase "within" their view, it is logical to assume that their intention is to proscribe transactions in locations where juveniles could view the activity.

**{¶24}** In *State v. Turner*, 4th Dist. No. 08CA3234, 2009-Ohio-3114, the Fourth District addressed the sufficiency of the evidence on appeal from a juvenile specification conviction. Turner transported drugs from Columbus to Portsmouth, delivering them to the home of Cindy Mershon, and eventually distributing the drugs to local dealers in the Portsmouth area. Turner stayed at the Mershon residence and dealt crack cocaine and heroin on at least three separate occasions. When officers searched the residence, Turner was found in constructive possession of crack cocaine and heroin. The officers observed Mershon's nine year-old daughter leaving the residence immediately preceding the execution of the search. Testimony established Mershon's daughter and seventeen year-old son lived at the residence.

**{¶25}** The Fourth District held the observation of a nine year-old girl leaving the residence prior to the execution of the search warrant, which found drugs in the house, and the juveniles' residency in the home sufficient evidence to support Turner's conviction for the juvenile specification.

{¶26} In *State v. Cunningham*, 6th Dist. No. WD-08-063, 2009-Ohio-6970, the Sixth District held,

The state's evidence in this case as to the presence of juveniles consisted of background noise on the audiotapes that sounded like children's voices. There also was evidence that the drug transactions occurred at a residence in a mobile home park. Because children's voices were heard and the transactions occurred in a residence, the jury could reasonably have inferred that they took place "within the vicinity of a juvenile" as defined in R.C. 2925.01(BB). Establishing the juvenile enhancement elevates the degree of the offenses of which appellant was found guilty.

{¶27} In a footnote referenced in our Opinion and Judgment Entry on direct appeal in *Burns*, supra, we noted the State's citation to *State v. Smith*, 3rd Dist. No. 6-14-14, 2015-Ohio-2977, for the proposition Ohio courts have held a juvenile's presence in the residence, despite no evidence the juvenile actually viewed the illegal manufacture or cultivation, satisfies the sufficiency of the evidence where a 100 foot distance requirement must be met. In our opinion in *Burns*, we found the State's reliance on *Smith* misplaced, as the State had the burden of proving the juvenile was within 100 feet of the meth lab pursuant to the child endangering statute. *Smith* involved a juvenile enhancement specification, as is the issue presented here.

**{¶28}** In *Smith*, a child was present at the time of execution of the search warrant. The State presented evidence three juveniles resided at the residence. In the basement of the home, officers found a small, boxed off room, framed in by wood, closed off with cardboard and sealed with spray foam. Inside, Appellant cultivated marijuana for trafficking. The Third District found the State proved both the offenses occurred within 1000 feet of a school and sufficient evidence the cultivation was done in the same house where three juveniles resided. The court concluded the offense was within the vicinity of a juvenile based solely on the juveniles residing in the home where the cultivation occurred.

**{¶29}** The investigating officers herein testified at trial the basement door was unlocked at the time of the search. The basement was accessible from the outside of the home and from an entryway near the kitchen. The children were present when law enforcement initially arrived at the residence, and were told no adults were home. The children were again present when the search was conducted. State's Exhibit 49 introduced at trial depicts the basement door located in the kitchen of the residence. The picture indicates the stairs leading to the basement, with the meth lab in view.

**{¶30}** Based upon the evidence presented, we find the juvenile specifications were supported by sufficient evidence and the jury reasonably found the specifications proven beyond a reasonable doubt despite the lack of definite evidence the juveniles were within 100 feet of the meth lab.

**{¶31}** The first assignment of error is overruled.

II.

{¶32} In the second assignment of error, Appellant maintains she was deprived of the effective assistance of trial counsel due to counsel's failure to argue the insufficiency of evidence with regard to the juvenile specifications attendant to Counts One and Two.

{¶33} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

{¶34} Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052.

**{¶35}** Based upon our analysis and disposition of Appellant's first assignment of error, we find Appellant has not demonstrated prejudice as a result of any alleged error, as the outcome of the trial would not have been different.

**{¶36}** The second assignment of error is overruled.

III.

**{¶37}** Based upon our March 29, 2017 Entry granting Appellant's application to reopen and in light of our analysis and disposition of Appellant's first and second assigned errors, we find Appellant has not demonstrated prejudice as a result of any alleged error of appellate counsel, and has not met the second prong of *Strickland,* supra.

**{¶38}** The third assignment of error is overruled.

**{¶39}** The Judgment of the Richland County Court of Common Pleas is affirmed, as it relates to the juvenile specifications on Counts One and Two.

By: Hoffman, P.J.

Wise, John, J. and

Wise, Earle, J. concur